CYNTHIA ROBERTS, BY NEXT FRIEND, *vs.* RACHEL C. ADAMS AND OTHERS.

Where an administrator, by leave of the Ordinary, sells the chattels of the estate on credit, he makes himself liable for the amount of the sales, if he neglects to take sureties on the notes for the purchase money as directed by the order for leave to sell, and he will not be relieved from liability because stay laws and military orders, afterwards passed and made, may have prevented the collection of the notes.

So, also, an administrator is liable if he takes as sureties, persons residing beyond the jurisdiction of the Courts of the State.

A wife being entitled to a distributive share of an intestate estate, her husband, at a sale of the estate by the administrator on credit, made purchases and gave his note for the purchase money. On bill, by the wife, for account and settlement: *Held*, That the note of the husband could not be set off against her claim.

An administrator who sold slaves of the estate in 1860 on credit, and took notes for the purchase money, which had not been collected, cannot defend himself from liability to account for the amount of the notes on the ground that notes for the purchase money of slaves had been declared void by Section 34, Article IV, of the Constitution of the State; the makers of the notes having made no such defence.

BEFORE CARROLL, CH., AT ABBEVILLE, JULY, 1868.

Jesse S. Adams, late of Abbeville District, died intestate in March, 1860, and James J. Adams became the administrator of his estate. In December, 1860, the administrator, by leave of the Ordinary, sold the personal estate on a credit of twelve months. James J. Adams died intestate in 1865, and the defendants, Rachel S. Adams and Wm. A. Lomax, administered on his estate. After his death, Thomas J. Roberts, the husband of the plaintiff, and one of the defendants, sued out letters of administration *de bonis non* on the estate of Jesse S. Adams.

The plaintiff is one of the children and distributees of Jesse S.

22A

Adams, and she filed this bill against Rachel S. Adams, Wm. A. Lomax, Robert J. Roberts, the sureties on the administration bond of James J. Adams, and others, for an account of her father's estate, and for settlement of her share therein to · her sole and separate use.

The accounts of the administrator, James J. Adams, were referred to the Commissioner, and he made a report thereon, to which exceptions were taken by some of the defendants. The other facts of the case, and the points made on the appeal, sufficiently appear in the Circuit decree, and the grounds of appeal therefrom. The Circuit decree is as follows:

CARROLL, Ch. The personal estate of the intestate, Jesse S. Adams, was sold by the administrator, James J. Adams, in December, 1860. Of the promissory notes for the purchases at that sale a large proportion remained uncollected in the possession of J. J. Adams, at the time of his decease. In the pleadings, as also in the exceptions to the report, it is stated that, after the death of J. J. Adams, these securities were "turned over" by his administrators to the defendant, Thomas J. Roberts, who had become the administrator of the unadministered estate of the intestate, Jesse S. Adams. The promissory notes referred to, however, are understood not to have been received by Roberts in satisfaction, either wholly or partially, of what was due by J. J. Adams, at his death, to the estate of his intestate, but to have been placed merely in the custody and charge of Roberts, to be collected, and, as far as practicable, for the use and benefit of that estate.

In omitting to exact from certain of the purchasers at the sale of his intestate's personalty, notes, with adequate sureties, as required by the order authorizing such sale, the administrator, J. J. Adams, incurred, undoubtedly, a personal liability for the amounts due by these purchasers.—*Massey* vs. *Cureton*, Chev. Eq., 184–5.

George F. Adams and John A. Adams had each purchased at that sale to an amount exceeding the estimated value of their respective shares in their father's estate. Both were then, as they now are, residents in the State of Louisiana.

It is stated that both are believed to be now solvent, and it is urged that, in accepting the note of George F. Adams, with John A. Adams as his surety, the administrator complied with the terms of sale prescribed by the order of the Ordinary. A person whose residence is without the jurisdiction of our Courts, and within

another and distant State, though of competent means, cannot be regarded as fulfilling the description of an approved or adequate surety to a debt contracted here, and with a creditor here resident.

There seems to have been among some of the persons entitled to distribution of the intestate's estate, some agreement or understanding that their purchases at the sale, by the administrator, to the extent of their several shares, should be treated as payments made to them upon that account. It does not appear that the plaintiff was a party to any such arrangement or understanding. Nor is it suggested that any act or conduct of her's had induced the administrator, J. J. Adams, to accept the note of her husband, without surety, for the amount of his purchases. The agreement, if it existed, was executory in its nature. It was not carried into execution before the commencement of this suit. The original note of the husband, Roberts, remained in the hands of J. J. Adams, at his decease, and, since his death, has been placed in the custody of Roberts, his successor in the administration. The plaintiff's equity to a settlement is considered, therefore, as subsisting unimpaired in respect of her entire portion in the estate of her father.—*Hill* vs. *Hill,* 1 Strob. Eq., 1; *Wardlaw* vs. *Gray,* 2 Hill Ch., 644.

The question which is presented by the third exception to the report is one of extraordinary interest. It elicited, however, but slight argument at the hearing. At the present juncture it may well be doubted whether any profitable result would be produced by any full or extended discussion of the subject. It is sufficient to say that the Court concurs in the conclusion of the Commissioner to which that exception is addressed, and holds, with him, that the notes executed to the administrator, J. J. Adams, in purchase of the negro slaves of his intestate, are not void in law, but are upheld by a valuable and valid consideration. No copy of the Exhibit marked "O," of the defendant, Roberts' answer, has been furnished to the Court. Nor has any competent evidence been adduced as to what constituted the "assets turned over" to him by the administrator of J. J. Adams. The probability seems to be that credit upon that account, to some extent, should have been allowed to the representatives of J. J. Adams. Yet, none such appears in the statement of the accounts accompanying the report. It is true, also, as was suggested in the argument, that, by certain Acts of the General Assembly, and certain edicts of the military authority that had been set up in this State, the administrator, J. J.

Adams, in his lifetime, and, afterwards, his administrators, were prevented from enforcing payment of the debts due for the negro slaves of his intestate that he had sold. No blame can be imputed either to J. J. Adams or his administrators, for having failed to collect these debts, and, had they, or any of them, been secured by note, with proper sureties, as required by the order of sale, the administrators of J. J. Adams, upon delivering them to the defendant, Roberts, would have been held entitled to a corresponding credit upon the indebtedness of their intestate to the estate of Jesse S. Adams. But these are matters which do not seem strictly necessary to be here considered. The case is presented to the Court simply upon the report and exceptions to it, and must be determined accordingly.

It is ordered and adjudged, that the exceptions to the Commissioner's report be overruled, and that the report be confirmed, and be made the decree of the Court.

It is further ordered, that the Commissioner inquire and report whether the defendant, Thomas J. Roberts, has made any settlement on, or provision for, the plaintiff, Cynthia, his wife, and the issue of their marriage; and, if no such settlement or provision has been made, that the said Thomas J. Roberts be at liberty to lay proposals before the Commissioner for that purpose, and that the Commissioner report what provision should be made for her, and her issue, out of her share and portion of the estate of the said Jesse S. Adams, deceased; as, also, the terms and trusts of a suitable settlement of the same, with the name of some fit person to be appointed her trustee in that behalf; and, also, that he inquire and report as to the propriety of investing the same as proposed by the bill or otherwise.

It is further ordered, if desired by the defendants, the administrators of J. J. Adams, deceased, that the Commissioner inquire and report as to what were the assets turned over by them to the defendant, Roberts, and as to what collections or other disposition of the same has been made by him, all equities being reserved.

And it is further ordered, that the parties have leave to move for such other orders as may be necessary or proper in this cause.

Let the costs of the suit be paid by the defendants, Rachel C. Adams and Wm. A. Lomax, out of the estate of their intestate, James J. Adams, deceased.

The administrators of J. J. Adams, deceased, appealed from the

decree, and now moved this Court for a modification or reversal, on the following grounds :

1. That the estate of J. J. Adams should not be held responsible, under the circumstances, for the sale notes taken without security, nor for the notes of George F. and John A. Adams, who were sureties for each other; and such should have been the decree. From December, 1861, to January, 1867, except in certain cases, collection of debts were prohibited by the civil and military authorities, and it would be manifestly unjust to hold the estate responsible for debts, the collection of which were prohibited.

2. That the purchase note of T. J. Roberts should have been considered as part of complainant's share of the estate, if the negroes are to be estimated in the accounts, as there can be no doubt that such was the original agreement to be carried into effect at the first settlement of the estate.

3. That there was error in holding that the notes given to J. J. Adams, the administrator, in purchase of the negro slaves of his intestate's estate, were not void in law, but were upheld by a valuable and valid consideration. It is respectfully submitted that the decree should have been in conformity to the existing Constitution of the State, (Article IV, Section 34,) which annuls and avoids all contracts for the purchase of slaves.

4. That the decree should have sustained the defendant's four exceptions to the Commissioner's report, and should have established and confirmed the alternative view presented by the Commissioner as the correct statement of accounts.

*Noble,* for appellants.

*Perrin & Cothran,* contra.

April 18, 1871. The opinion of the Court was delivered by

MOSES, C. J. If there are any circumstances presented by the testimony which should discharge J. J. Adams, the administrator of Jesse S. Adams, from the liability he incurred in failing to require security to all the notes taken by him at the sale of the personal property of his intestate, they have not been perceived by the Court.

The only ground of defense which is made in this regard is that the stay law, prescribed both by the civil and military authorities, prevented suit on the notes from December, 1861, to January, 1867, and being in operation up to his death, in 1865, he should not be responsible for debts, the collection of which was prohibited.

The default charged against him is a failure to comply with the terms fixed by the Ordinary who granted the order. The sale was in December, 1860, and it is clear that the stay law cannot operate to excuse a default made before its passage. If he had taken security, on the notes, considered good at the time, but which proved worthless by the occurrence of circumstances, while he was prevented from pursuing his legal remedy, he would have been without blame. His fault consists in not requiring security to the notes. The whole matter was in his power and control. He was not bound to deliver the property to the bidder until the terms of sale were complied with. If he did so, he stood in the position of security himself. He took the risk, and must abide by the consequences.—*Peay* vs. *Fleming,* 2 Hill Ch., 98 ; *Massey* vs. *Cureton,* Chev. Eq., 184-5.

Nor do we think that a different rule can be applied to the respective notes of George F. Adams and John Adams, on which they were mutual sureties. They were both of them then citizens of Louisiana, and so continue.

When, by an order of a Court having jurisdiction over the matter in which he acts, " competent," " adequate " or " good " personal security is prescribed as one of the conditions of a sale, the party acting alone under the authority which it confers must look to that kind of personal security which can be made available through the process of the Courts of this State. It is unreasonable to suppose that those interested in the fund should be subjected to the delay consequent upon the pursuit of the debtor in a foreign Court, whose mode of procedure may be entirely different from that which prevails in the Courts of this State, and the laws which it administers possibly less careful of the rights of creditors than those which obtain in the jurisdiction where the contract was made. It is a reliance too upon means beyond the supervision of the administrator, and even if, by the possession of property, the security was good at the time, a change and transfer might be made of it without the knowledge of the party who stands as a trustee for those really interested in the notes belonging to the estate. It is safer, both for the administrator and the distributees for whom he holds, that personal security on sales made by him should be restricted to residents of the State.

In relation to the claim of the plaintiff to a settlement to her sole and separate use of her share in the estate of her deceased father, it is not resisted by the defendants, the administrators of James J. Adams,

on the ground that the marital rights of the husband had attached upon it. Such a proposition could not be maintained, and is not made.

It is claimed, however, that the note given by her husband for his purchase at the sale should be regarded as part payment of her share, according to the original agreement in respect to the notes of the other distributees.

If it had been proved that such was the agreement of the plaintiff, it could not bind her as a contract, because she was not *sui juris*, and was incapable of giving any legal assent. There are cases where both married women and infants will be precluded from the aid which they seek in a Court of Equity, where they have been guilty of fraud. This is not pretended against the plaintiff here. So far was she from being a party to such understanding that the Commissioner reports "there was no proof of her assent to the purchases by her husband, or to any such arrangement," and the Chancellor, in his decree, arrives at the same conclusion. How can it be said that she has barred herself of her equity to a settlement? She was compelled to resort to the Court for an account and payment of her share of the estate of her deceased father. When the amount of it is ascertained, the administrator can only be relieved from further claim by a payment in conformity to the decree of the Court.

The fund is subject to its distribution and order; and we concur with the Circuit decree in the direction which it has given as to her interest in it.

The defendants, the administrators of J. J. Adams, submit, as one of the grounds of their appeal, that the notes given to their intestate as the administrator of Jesse S. Adams, for the purchase of slaves, should not be charged in favor of the estate, because void for want of a valuable consideration.

The general question involved in the proposition has already been fully heard and decided in *Calhoun* vs. *Calhoun*, (ante, p. 283,) and the principles which governed the judgment of the Court there apply with increased force to the case before us.

Here a bill is filed against the representatives of an administrator for an account of the estate of his intestate committed to his hand for administration. A portion of the property was slaves sold by him. The purchasers, who are parties to the cause, do not appeal from the Circuit decree which held them liable; but the objection is made in this Court on the appeal of the representatives

of the vendor. It presents the singular feature of a seller claiming that his own sale should be avoided for want of consideration to make it binding on the buyer.

The whole agreement, however, as to the sale of the negroes, had been executed. The Commissioner reports "that the purchases made by the parties were admitted to have been on account of their shares, and the notes of George and John Adams given subject to a settlement."

It is ordered and adjudged that the Circuit decree be affirmed, and the motion dismissed. .

*Willard*, A. J., and *Wright*, A. J., concurred.